UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

MICHAEL T. COFFEY,

                Plaintiff,

    v.

MICHAEL ASTRUE, Commissioner of
Social Security Administration,

                Defendant.
_____/

No. C 11-01380  LB

**ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY
JUDGMENT**

**[ECF Nos. 20 & 22]**

## I. INTRODUCTION

Plaintiff Michael Coffey moves for summary judgment, seeking judicial review of a final decision by Defendant Michael Astrue, the Commissioner of Social Security Administration, denying him Social Security Income disability benefits for his claimed disability of sleep apnea and Restless Leg Syndrome ("RLS").  Plaintiff's Motion, ECF No. 20.[1]  The Administrative Law Judge ("ALJ") rejected the diagnoses of sleep apnea and Restless Leg Syndrome as a severe impairments, and denied Social Security Income ("SSI") disability benefits.  Administrative Record ("AR") 22.

Pursuant to Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument.  All parties have consented to the court's jurisdiction.  *See* ECF Nos. 23 & 24.  For the reasons stated below, the court **GRANTS IN PART** Mr. Coffey's motion for summary judgment,

---

[1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

**DENIES** the Commissioner's cross-motion for summary judgement, and **REMANDS** this case to the Social Security Administration for further proceedings to determine Mr. Coffey's residual functional capacity and whether there are jobs in the national economy that Mr. Coffey can do.

## II. PROCEDURAL HISTORY

Mr. Coffey, now 61, applied for disability benefits on January 17, 2008.  AR 62.  He alleged that he had been disabled since May 1, 2005 by a combination of impairments:  sleep apnea; Restless Leg Syndrome; fatigue; and lack of focus.  AR 66.  The Commissioner denied his application both initially and upon reconsideration.  AR 66-69, 72-75.  Mr. Coffey timely requested a hearing before an ALJ on June 11, 2008.  AR 79-80.

An ALJ conducted a hearing on May 26, 2009, in San Jose, California.  AR 20.  Mr. Coffey appeared with his attorney, Andrew Shaffer.  AR 26.  After the hearing, the ALJ sent Mr. Coffey for two post-hearing consultative examinations.  A medical examination was performed on June 25, 2009 by Dr. Clark Gable.  AR 332-340.  Dr. Maria Antoinette Acenas performed a Psychological Consultative Examination on June 12, 2009.  AR 328

On October 3, 2009, the ALJ found that Mr. Coffey was not under a disability at any time from May 1, 2005, the alleged onset date, through June 30, 2007, the date Mr. Coffey was last insured.  AR 26.  On November 17, 2009, Mr. Coffey filed a request for review of the ALJ's decision.  AR 15.  As part of the appeal process, counsel for Mr. Coffey submitted the following: a brief (AR 140-44); a supplemental brief (AR 145-48); letters regarding Mr. Coffey's work ethic and work history from lay witnesses Gordon Waugh (AR 150), Robert Lawrence (AR 156), Laurel Griffin (AR 158), Harvey Miller (AR 164), Ron Friedland (AR 168), and Hugh Pouncey (AR 169); and an opinion letter from Dr. Hemalatha Narra, a treating neurologist, discussing Mr. Coffey's Restless Leg Syndrome.

The Appeals Council denied Mr. Coffey's request for review on January 18, 2011, but did accept seven evidentiary exhibits, including evidentiary submissions by four of the lay witnesses and the letter from Dr. Narra.  The Appeals Council ordered that these exhibits were to be made part of the

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  Administrative Record.  AR 5-7, 9.[2]

2       After Mr. Coffey's claim was denied by the Appeals Council, the attorney who had represented

3  Mr. Coffey in the administrative proceedings withdrew.  AR 4.  On March 18, 2011, the Appeals

4  Council granted Mr. Coffey's request for additional time to file a civil action, extending the time for

5  filing by 60 days.  AR 1-3.  On March 23, 2011, Mr. Coffey acting in *pro per,* timely sought judicial

6  review under 42 U.S.C. § 405(g).  Complaint, ECF No. 1.  Tom Weathered appeared as counsel for

7  Mr. Coffey on December 6, 2011.  Both sides have now moved for summary judgment.  Plaintiff's

8  Motion, ECF No. 20; Defendant's Opposition and Motion, ECF No. 22.

9                                    **III.  LEGAL STANDARD**

10  **A.  Standard of Review**

11       Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the

12  Commissioner if the plaintiff initiates the suit within 60 days of the decision.  District courts may set

13  aside the Commissioner's denial of benefits only if the ALJ's  "findings are based on legal error or

14  are not supported by substantial evidence in the record as a whole."  42 U.S.C. § 405(g); *Vasquez v.*

15  *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quotation omitted).  "Substantial evidence means more

16  than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

17  might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

18  Cir. 1995).  If the evidence in the administrative record supports both the ALJ's decision and a

19  different outcome, the court must defer to the ALJ's decision and may not substitute its own

20  decision.  *See id.*; *accord Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).

21  **B.  Applicable Law: Five Steps To Determine Disability**

22       An SSI claimant is considered disabled if (1) he suffers from a "medically determinable physical

23  or mental impairment which can be expected to result in death or which has lasted or can be

24  expected to last for a continuous period of not less than twelve months," and (2) the "impairment or

25  impairments are of such severity that he is not only unable to do his previous work but cannot,

26  considering his age, education, and work experience, engage in any other kind of substantial gainful

27  _____

28       [2]  The Appeals Council did not appear to either make part of the record or consider the lay
       affidavits of Ron Friedland or Hugh Pouncey.  AR 8, 9.

work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(A) & (B).

The Social Security regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 404.1520.  The five steps are as follows:

**Step One.**  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" and is not entitled to benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two.  *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.**  Is the claimant's impairment (or combination of impairments) severe?  If not, the claimant is not disabled.  If so, the evaluation proceeds to step three.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.**  Does the impairment "meet or equal" one of a list of specified impairments described in the regulations?  If so, the claimant is disabled and is entitled to benefits.  If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four.  *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.**  Considering the claimant's residual functional capacity, is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled and is not entitled to benefits.  If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.**  Considering the claimant's residual functional capacity, age, education, and work experience, is the claimant able to "make an adjustment to other work?"  If not, then the claimant is disabled and entitled to benefits.  *See* 20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do.  There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.  If the Commissioner meets this burden, the claimant is not disabled.

For steps one through four, the burden of proof is on the claimant.  At step five, the burden shifts to the Commissioner.  *See Tackett*, 180 F.3d at 1098.

## IV.  SUMMARY OF RECORD AND ADMINISTRATIVE FINDINGS

This section summarizes (A) the medical evidence in the administrative record, (B) Mr. Coffey's testimony, and (C) the ALJ's findings.

**A.  <u>Medical Evidence</u>**

Mr. Coffey is currently 61 years old.  He alleged he was unable to work due to obstructive sleep apnea, Restless Leg Syndrome, and chronic fatigue.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    **1. Dr. Carl Ebnother: Treating Physician**

2        Dr. Ebnother was Mr. Coffey's treating physician from July 1997 until January 2004.  The

3    doctor's earliest notes from July 1997 indicate that Mr. Coffey was complaining of Restless Leg

4    Syndrome. AR 277, AR 281.  Dr. Ebnother's treatment record indicates that Mr. Coffey continued to

5    seek treatment for his Restless Leg Syndrome through 2003.  AR 277,  281, 284.  The treatment

6    notes also refer to chronic fatigue.  AR 279.  Dr. Ebnother also noted Mr. Coffey's sleep apnea and

7    sent him for a sleep study.  AR 188.

8    **2. Dr. Huan Le: Treating Physician**

9        Dr. Le saw Mr. Coffey on December 2, 2004 at the referral of Dr. Ebnother.  AR 188.  Dr. Le

10   was a Stanford Sleep Fellow, and saw Mr. Coffey at Sleep Medicine Services/O'Connor Health

11   Center. *Id.*  Dr. Le noted that Mr. Coffey was also coming in for a follow up diagnosis and treatment

12   for his restless leg syndrome.  *Id.*  Dr. Le reports that Mr. Coffey "has a long history of restless leg

13   syndrome which manifests as a focal akathesia and bilateral lower extremity improved with leg

14   movement, worsens as he [sic] falling asleep." *Id.*  Dr. Le further reports that Mr. Coffey was

15   diagnosed with these symptoms in 1978 and references the different treatments prescribed to Mr.

16   Coffey over the years including:  iron supplements, bromocriptine and, in 2003, Mirapex, which

17   caused Mr. Coffey severe side effects.  AR 188.

18       Mr. Coffey reported to Dr. Le that he had a history of periodic limb movement during the night

19   as well as a long history of "excessive daytime somnolence"  and that he "takes a nap two times a

20   day two to three hours each often in the afternoon." *Id.*  Dr. Le's diagnosis included findings of

21   obstructive sleep apnea, restless leg syndrome, and possible periodic limb movement disorder.  AR

22   190.  Dr. Le's report made recommendations to treat Mr. Coffey's sleep apnea.  AR 191.  Doctor Le

23   opined that he expected Mr. Coffey's RLS might improve with treatment of the apnea, but as Mr.

24   Coffey "continues to experience significant RLS symptom [sic] and he is adamant about using a

25   medication with low side effect profile," Dr. Le changed Mr. Coffey's prescription to a different

26   medication.  AR 191.

27   **3. Dr. Alex Clerk: Treating Physician**

28       Dr. Clerk treated Mr. Coffey for his sleep apnea and restless leg syndrome starting in late 2004.

ORDER (C11-01380 LB)

5

On December 29, 2004, Dr. Clerk submitted a final report on the results of Mr. Coffey's sleep study (nocturnal polysomnogram).  Dr. Clerk noted that the sleep study confirmed the presence of sleep apnea, and noted that Mr. Coffey also has Restless Leg Syndrome and was asked to continue on Mirapex to treat that condition.  AR 192.  The report states that the results of the sleep study are "consistent with Obstructive Sleep Apnea Syndrome and Restless Leg Syndrome."  AR 193.  Attached to the written report is the study, which repeats that the study indications include obstructive sleep apnea and restless leg syndrome.  AR 195.  While the report does not indicate any periodic leg movements, in the section of the report reserved for the recording technician's comments, there is a notation that during the test Mr. Coffey "complained of restless leg pain during the night."

Mr. Coffey underwent a second nocturnal polysomnogram on August 9, 2005 to fit him for a CPAP device to treat his apnea.  Dr. Clerk also wrote a report of this study.  AR 226.  The report notes that there were "0 periodic leg movements of sleep associated with arousals."  *Id.*  Dr. Clerk met with Mr. Coffey over the next several months to check on his progress.  Dr. Clerk's records demonstrate that the CPAP treatment was not well tolerated by Mr. Coffey, who opted instead for a dental device.  AR 234-36.  In February 2008, Dr. Clerk prescribed a repeat polysomnogram for Mr. Coffey.  AR 237.

### 4. Dr. Jeffery Duckham: Treating Physician

Dr. Duckham became Mr. Coffey's treating physician in May 2005.  AR 142.  Dr. Duckham's treatment record shows that as of their first meeting in May 3, 2005, they discussed Mr. Coffey's Restless Leg Syndrome and the various prescriptions he had used to treat that condition.  The treatment record also notes that Mr. Coffey appeared groggy and sleepy and that he had "chronic fatigue."  Mr. Coffey saw Dr. Duckham several times in 2005, once in 2006, and twice in 2007.  AR 215-222.  In each of these examinations, Mr. Coffey complained about his Restless Leg Syndrome, and there were apparently some changes in the medications Dr. Duckham prescribed to treat it.  AR 221-22.  In both 2006 and 2007, Mr. Coffey and Dr. Duckham discussed Mr. Coffey's disability claim plans.

On November 5, 2007, Dr. Duckham performed a disability evaluation on Mr. Coffey.  AR 305.

UNITED STATES DISTRICT COURT
For the Northern District of California

The evaluation notes that Mr. Coffey had been Dr. Duckham's patient for two and a half years at that point.  Dr. Duckham reviewed the strategies he had employed with Mr. Coffey over that time to deal with his Restless Leg Syndrome and resulting severe fatigue.  *Id.*  The doctor noted that the medications had severe side effects on Mr. Coffey that "impaired [Mr. Coffey] from being able to adequately work in society."  AR 305-06.  Dr. Duckham had reviewed all of Mr. Coffey's previous medical records and noted that the diagnoses of sleep apnea, Restless Leg Syndrome, and chronic fatigue had been ongoing since 1996.  Dr. Duckham opined that Mr. Coffey's fatigue had "increased to the point of disability."  *Id.*  The report further notes that Mr. Coffey would be incapable even of low stress jobs due to fatigue and an inability to concentrate.  AR 307.

As to the onset date of these issues for Mr. Coffey, Dr. Duckham's evaluation states that the symptoms of Restless Leg Syndrome preceded Mr. Coffey's first visit to him in May 2005.  AR 305.

### 5. Dr. Linda Barman: Treating Physician

Dr. Barman saw Mr. Coffey in the Urgent Care Clinic of Santa Clara Valley Medical Center on March 6, 2008.  AR 267.  He went to the Clinic for a refill of the medication used to treat his Restless Leg Syndrome.  *Id.*  The treatment record notes that he could no longer afford to go to his former private physician.  Dr. Barman notes that Mr. Coffey had provided her with all of his old medical records and the reports from his sleep study.  She also notes that he has Restless Leg Syndrome and central sleep apnea.  AR 268.

### 6. Dr. Yuyan Han: Treating Physician

Dr. Han saw Mr. Coffey in the Santa Clara Valley Hospital Chest Clinic on May 15, 2008.  AR 263.  Mr. Coffey was referred by Dr. Barman of Moorpark-Adult Medicine.  Mr. Coffey reported to Dr. Han that he had been undergoing treatment for Restless Leg Syndrome since 1989 with drugs being prescribed to him for its treatment since 1995.  *Id.*  Dr. Han's treatment record indicates that Mr. Coffey reported significant side effects of the drug that had been prescribed to him.  Dr. Han's report also notes that Mr. Coffey suffers from "excessive daytime somnolence as a result of poor sleep quality."  AR 265.

### 7. Dr. Vibha Mohindra: Treating Physician

Dr. Mohindra saw Mr. Coffey in the Santa Clara Valley Hospital Chest Clinic on June 11, 2008.

UNITED STATES DISTRICT COURT
For the Northern District of California

AR 260.  The visit was a follow up to Mr. Coffey's May 15, 2008 visit at that facility with Dr. Han.
Both visits were for Mr. Coffey's Restless Leg Syndrome.  While these visits took place after Mr.
Coffey's date last insured for Social Security purposes, Dr. Mohindra's treatment record indicates
that Mr. Coffey's "chief complaint is restless legs" and notes the fact that Mr. Coffey has been
undergoing treatment for his Restless Leg Syndrome since 1995.  AR 260.  Dr. Mohindra adjusted
the medicines used to treat Mr. Coffey's Restless Leg Syndrome and advised a follow-up
polysomnogram.

**8.  Dr. Eric Hsiao: Treating Physician**

Dr. Mohindra referred Mr. Coffey to Dr. Hsiao at the VMC Sleep Lab for a follow-up nocturnal
sleep study to test the effectiveness of the dental device on Mr. Coffey's sleep apnea.  AR 318.  The
study was conducted on November 6, 2008.  During the first half of the study, Mr. Coffey achieved
only one minute of REM sleep, although the test did not register any "arousing paroxysmal leg
movements."  AR 319.  Similarly, no leg movements were noted during the second half of the sleep
study.

**9.  Dr. Owen Lum: Treating Physician**

Dr. Lum treated Mr. Coffey in 2008 for frozen shoulder and for Restless Leg Syndrome.  AR
315, 317.

**10.  Dr. Glenn Ikawa: Social Security Psychological Consultative Examination**

This pre-hearing evaluation took place on March 4, 2008.  AR 238-48.  Only two boxes are
checked on the form.  One is the box indicating that there is insufficient evidence regarding Mr.
Coffey's medical disposition and the second box checked indicates that finding of insufficient
evidence completes the medical portion of the disability determination.  AR 238.  The report
contains no other findings.

**11.  Dr. Maria Antoinette Acenas: Social Security Psychological Consultative Examination**

At the conclusion of Mr. Coffey's disability hearing, the ALJ sent him for a psychiatric
evaluation.  The evaluation took place on June 12, 2009.  AR 328.  This report noted Mr. Coffey's
complaints of frustration and depression due to his Restless Leg Syndrome and the side effects of the
medications he was taking to treat that issue.  *Id.*  The doctor opined that Mr. Coffey's mental state

1    would not preclude him from being able to perform work activities on a normal basis, but did not

2    consider his physical factors in making this determination.  AR 328.

3        **12. Dr. Clark Gable: Social Security Consultative Physical Examination:**

4        Post hearing, the ALJ also sent Mr. Coffey for a physical evaluation.  The evaluation took place

5    on June 1, 2009.  AR 332.  Dr. Gable reviewed Mr. Coffey's "voluminous records."  AR 339.  Dr.

6    Gable noted in the medical history section of the report that Mr. Coffey's medical records indicate

7    restless leg syndrome concerns dating back 30 years that intensified over the last years to the point

8    where he could no longer sustain work.  *Id.*  In the medical limitations section of the report Dr.

9    Gable states that "assessment of functional capacity in this claimant is very difficult."  AR 340.  Dr.

10   Gable goes on to say that "[g]iven his apparent chronic difficulty with sleep, with attendant daytime

11   fatigue and somnolence, nay [sic: may] indeed make it difficult to work at a full time job."  *Id.*

12       **13. Dr. Hemalatha Narra: Treating Physician**

13       Dr. Narra saw Mr. Coffey for a follow up visit in the neurology clinic at the Santa Clara Valley

14   Medical Center on June 11, 2010.  AR 341.  Dr. Narra confirmed Mr. Coffey's diagnosis of severe

15   intractable Restless Leg Syndrome using what Dr. Narra refers to as the recognized diagnostic

16   criteria.  AR 342.  Dr. Narra notes that there is no medical test available to confirm RLS directly.

17   AR 341.  As to the results of Mr. Coffey's prior sleep studies that registered no leg movements, Dr.

18   Narra opined that overnight sleep studies "do not register RLS because the patient is kept awake by

19   RLS and time awake is not considered part of the sleep study.  The sleep that Mr. Coffey achieved in

20   overnight studies was achieved by taking sufficient medication to suppress RLS.  What is missing

21   from these sleep studies is how long it took to achieve suppression of RLS as well as the effects

22   chronic sleep and side effects of these medications which can severely affect concentrations in the

23   daytime hours." *Id.*

24       Dr. Narra's report also states that RLS becomes intractable when the limits of treatment options

25   are reached because of severe reactions to the medications and that severe intractable RLS "can

26   often be disabling."  AR 341.  In Dr. Narra's opinion, Mr. Coffey is disabled from work by both

27   severe RLS and the side effects of treatment for RLS.

28    **B. Mr. Coffey's testimony**

UNITED STATES DISTRICT COURT
For the Northern District of California

Mr. Coffey appeared before an ALJ on May 26, 2009. AR 48. Attorney Andrew Shaffer represented him at the hearing. *Id.* The following is a summary of the facts to which Mr. Coffey testified at that hearing.

The ALJ opened the proceedings by asking Mr. Coffey what "he had been doing for money all these years." AR 51. Mr. Coffey responded that he was surviving on credit and that he was in debt. The ALJ then asked Mr. Coffey the size of his debt, to which Mr. Coffey responded that he was about $120,000 in debt. Mr. Coffey also offered that he had worked in the computer industry as a programmer and that as his "disability got worse he was still trying to earn some money during that period but it was hard to get work." AR 51. When he did work in the computer industry he often worked ten hours a day. AR 57. He was able to sustain this work schedule until 2003-2004 but starting in 2005, he "went downhill very substantially" and has not had many "clear" days. AR 57.

Mr. Coffey testified that his diagnosis was "severe RLS, one thing and obstructive sleep apnea" as well as central sleep apnea.[3] AR 52. He had tried to treat his sleep apnea with a CPAP device but that was not successful for him so he was treating his apnea with a dental appliance, which was to "some extent helping." AR 52.

Mr. Coffey testified that "the combination of the restless legs and the side effects of the drugs I have to take is really my dilemma" because if he does not take the drugs he is "wiped out very rapidly" but the drugs were "causing [him] a lot of side effects." AR 53. He elaborated that the drugs dull his brain quite rapidly and to the point where he feels like a "zombie, more or less" and that he cannot even read a book. AR 53. He has also developed a sensitivity to the drugs he is taking, Requip and Neurontin, that requires him to take the drugs in small doses over time to avoid seizure-like effects. *Id.* He takes both of the drugs in the evening when he is starting to prepare for sleep because once he takes them he is "no longer capable of doing anything useful." AR 54.

Mr. Coffey reported that once he takes the drugs he starts walking around until he feels tired enough to try to lie down. He finds hard surfaces more amenable to his Restless Leg Syndrome so

---

[3] While the transcript records this as "sensual" sleep apnea, reference to Mr. Coffey's medical records that are part of the file indicates that he had been diagnosed with "central" sleep apnea.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1  he lies down on either a hard sofa or the floor.  AR 54.  He may also have to take additional doses of

2  his medication either before he falls asleep or during the night if he awakens.  AR 54-55.  He does

3  not usually fall asleep until midnight and then sleeps until noon or 2 p.m. the next day.  AR 55.

4  Within about an hour of waking he begins to feel tired like "someone . . . who hasn't slept for . . . 36

5  hours" and after about four hours from the time he wakes up he is too tired to really do much in the

6  way of work.  AR 57-58.

7       His current physician, Dr. Lund, has adjusted his medications to alleviate the medications' side

8  effects such as impaired concentration, difficulty responding to people when they are speaking to

9  him, what he believes to be seizures, poor coordination, and an impaired immune system.  AR 59-

10  60.  Mr. Coffey is divorced.  He testified that while he had been having symptoms of Restless Leg

11  Syndrom since 1976, the symptoms became "an all night thing" in 1989 and that while he was

12  married his wife would complain about his RLS and kick him out of bed.  AR 55.  Mr. Coffey rides

13  a bike for exercise when he can and drives a car when he believes it is safe to do so.  AR 55-56.

14  **C.  Medical Expert Testimony**

15       At the outset of the ALJ hearing on May 26, 2009, the ALJ received evidence by phone from

16  Medical Expert, Dr. Stephen Gerber.  AR 48.  The ALJ first ascertained whether Dr. Gerber had

17  reviewed the file.  The doctor responded that he had "received a disk with Exhibits through 8F" but

18  did not clarify whether that meant that he had reviewed the file.  *Id.*  The ALJ then asked the doctor

19  whether based solely on the file he had an opinion as to whether Mr. Coffey met or equaled any of

20  the listings.  Dr. Gerber responded that "no listings are met or equaled" and that "no one listing

21  would apply" in Mr. Coffey's case.  *Id.*  Counsel for Mr. Coffey was asked whether he had any

22  questions for the doctor.  Counsel replied that as he believed the case to be a "step 5 case" he had no

23  questions for the doctor.  *Id.*  There being no further questions by the ALJ for Dr. Gerber, the doctor

24  was excused from the remainder of the hearing proceedings.  AR 49.

25  **D.  Vocational Expert Testimony**

26       Vocational Expert Morrell testified at the hearing.  He was asked only a single question by the

27  ALJ as to the nature of a software programming position, to which he responded that it was

28  "sedentary, skilled."  AR 52.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

ORDER (C11-01380 LB)

UNITED STATES DISTRICT COURT
For the Northern District of California

### E. __Administrative Findings__

Applying the sequential evaluative process, on October 23, 2009, the ALJ held that Mr. Coffey was not disabled under Section 216(I) and 223(d) of the Social Security Act during the period from his alleged onset of disability date, May 1, 2005 through June 30, 2007, the date he was last insured for Social Security purposes.  The ALJ found therefore that Mr. Coffey was not entitled to disability insurance benefits.  AR 20.

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity during the relevant period from May 1, 2005 through June 30, 2007.  AR 22.

At step two, the ALJ found that through the date he was last insured, Mr. Coffey suffered from a medically determinable impairment of sleep apnea.  AR 22.  As it related to Mr. Coffey's reported Restless Leg Syndrome, the ALJ held that it was not "medically determinable" because the "medical evidence submitted in [the] case did not contain appropriate clinical findings to support such a diagnosis."  AR 23.  Despite this finding, the ALJ considered Mr. Coffey's Restless Leg Syndrome at step three because the Restless Leg Syndrome was the focus of Mr. Coffey's testimony about his disability at his hearing, as he testified that his apnea had improved.  AR 23, 52.  The ALJ noted that Mr. Coffey's Restless Leg Syndrome had "been adopted as a 'diagnosis' by the claimant's treating physicians."  AR 23.  As to Mr. Coffey's claim regarding chronic fatigue, at step two the ALJ found that there were not sufficient findings of chronic fatigue separate and apart from Mr. Coffey's alleged sleep problems.  "Rather than making a diagnosis based on objective signs, it appears that treating physicians have, at most, noted claimant's subjective complaints of 'chronic fatigue.'"  *Id.*

At step three, the ALJ found that through the date last insured, Mr. Coffey did not suffer from "an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore the claimant did not have a severe impairment or combination of impairments."  AR 23.

In reaching the conclusion that Mr. Coffey did not have a severe impairment or combination of impairments, the ALJ states that he considered the symptoms and how consistent they were with the objective medical evidence (based on the requirements of 20 C.F.R. § 404.1529 and Social Security Rulings 96-4p and 96-87p).  AR 23.  He also considered opinion evidence under 20 C.F.R.

ORDER (C11-01380 LB)

12

§ 404.1527 and Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-3p.  *Id.*  His opinion indicates that he followed a two-step process, first determining whether there was a medically-determinable physical or mental impairment that reasonably could be expected to produce Mr. Coffey's pain and other symptoms, and then evaluating the intensity, persistence, and limiting effects of the symptoms to determine the extent that they limited Mr. Coffey's ability to do basic work activities.  AR 23-24.  For the second part, whenever Mr. Coffey's statements about the intensity or functionally limiting effects of pain or other symptoms were not substantiated by objective medical evidence, the ALJ made findings on the credibility of the statements "based on a consideration of the entire record."  AR 24.

The ALJ first reviewed Mr. Coffey's allegations of disability at the hearing.  The ALJ looked to Mr. Coffey's testimony at the hearing regarding his disability where Mr. Coffey focused on "the combination of the restless legs and the side effects of the drugs" he has to take.  AR 24.  Mr. Coffey explained at the hearing that, as it related to the Restless Leg Syndrome, "if I don't take the drugs I really am wiped out very rapidly in a matter of a day or two . . . but the drugs are really now causing me side effects . . . they really dull my brain quite rapidly. . . so when I start taking them I am really useless for doing anything" . . . "I really become a zombie, more or less."  AR 24.  At the hearing, Mr. Coffey testified that, as to his sleep apnea, he had a dental appliance now that helps.

The ALJ found that the medical evidence in the record established that Mr. Coffey's "testimony regarding his symptoms is not entirely credible."  *Id.*  In reaching that conclusion, the ALJ considered "the absence of clinical signs in the medical record that would support the alleged severity of the claimant's sleep problems; the claimant's inconsistent work history and earnings record even prior to the alleged onset of the disability – Mr. Coffey's earnings record suggests he withdrew himself from the competitive labor market in 2001, the last year he had significant earnings . . .indicating that the claimant has limited motivation to work."  AR 24.  The ALJ also found that Mr. Coffey's credibility was impacted by what the ALJ described as "the rather extreme fashion" in which Mr. Coffey had described his symptoms at the hearing.  *Id.*

The ALJ considered Mr. Coffey's testimony that he became "really wiped out very rapidly in a matter of a day" if he did not take the medication for Restless Leg Syndrome but found what the

1   ALJ referred to as "significant discrepancies between the claimant's asserted difficulties with sleep

2   and the diagnostic tests and findings made on the examination."  *Id.*

3       The ALJ found that while Mr. Coffey had testified that he had been diagnosed with Restless Leg

4   Syndrome in 1976 with his symptoms intensifying in 1999, his 2004 overnight sleep study showed

5   "0 periodic leg movements."  AR 25.  The ALJ then went on to summarize Mr. Coffey's testimony

6   at the hearing about the problems his  Restless Leg Syndrome and the medication to treat it caused

7   him when he was trying to sleep: "as soon as I take the drugs, pretty soon after that I can't do much

8   . . . but I have to walk around" and that he has to "wander around" for a while before he tries to lie

9   down until "eventually [he gets] to the point where [he] can get some sleep, usually starting on the

10  floor.  *Id.*  The ALJ found that "the medical evidence of record does not corroborate this type of

11  difficulty; In November of 2008, the claimant underwent another overnight sleep study in which

12  there were 'no independent arousing paroxysmal leg movements during sleep."  *Id.*

13      The ALJ relied in great part on the post-hearing consultative examination of Dr. Gable.  While

14  counsel for Mr. Coffey argued that Dr. Gable's report and findings were consistent with those of Mr.

15  Coffey's treating physician, Dr. Duckham, the ALJ noted that he "rejects that notion completely."

16  AR 25.  The ALJ first reviewed the findings in Dr. Gable's report.  The ALJ specifically noted Dr.

17  Gable's summary of Mr. Coffey's medical record with a focus on Mr. Coffey's 2004 sleep apnea

18  testing where "*[t]here was no periodic leg movement during this study.*" (Italics supplied in ALJ

19  decision).  AR 25.  Dr. Gable's report noted that Mr. Coffey felt that his fatigue and daytime

20  drowsiness were related to his Restless Leg Syndrome more than to his sleep apnea.  As reported in

21  the ALJ's decision, Dr. Gable further found that Mr. Coffey reported at the time of the evaluation

22  that he was better tolerating the medications prescribed at that point, while at his 2008 evaluation at

23  Valley Medical Center, Mr. Coffey had reported that the medication did not help him much.  *Id.*

24      The ALJ's decision states that "[g]reat weight is given to the medical opinion expressed by Dr.

25  Gable: 'the claimant's *apparent* chronic difficulty with sleep . . . *may* indeed make it difficult to

26  work a full time job.'"  AR 25 (italics in ALJ decision).  The ALJ interpreted the word "may" as used

27  in Dr. Gable's opinion to mean that Dr. Gable was saying that Mr. Coffey's condition was not

28  certain to affect Mr. Coffey's ability to work a full time job.  "If the doctor had used the words

1   'would' or even 'more likely than not,' his words would communicate another meaning.  AR 25-26.

2   The ALJ rejected as conclusory the evidence provided by Mr. Coffey's physician, Dr. Duckham,

3   in Exhibit 10F to the proceedings that "gradually over time, [Mr. Coffey's] fatigue has increased to

4   the point of disability."  *Id.*  The ALJ also found that this conclusion invaded the province of the

5   ALJ.  The ALJ also rejected Dr. Duckham's opinion in Exhibit 11F as to the onset date of Mr.

6   Coffey's claims as "apparent speculation" and states that Dr. Duckham has failed to cite any

7   "clinical findings that would support his decision to adopt a reported diagnosis of 'restless leg

8   syndrome.'" AR 26.  Finally, the ALJ noted that he had given weight to the State Agency

9   physicians, who had indicated that there was "insufficient" medical evidence in the case.  *Id.*

10  Based on the above, the ALJ rendered a decision that Mr. Coffey was not disabled under section

11  216(i) and 223(d) of the Social Security Act through June 30, 2007, the last date insured.  AR 27.

## V.  DISCUSSION

13  Mr. Coffey challenges the ALJ's decision on two grounds: (A)  the Commissioner and the ALJ

14  each erred by failing to consider all of the medical evidence; and (B) the ALJ erred by making an

15  adverse finding as to Mr. Coffey's credibility as that finding is not supported by substantial

16  evidence.

### A.  Consideration of the Medical Evidence

18  Mr. Coffey alleges three errors related to the consideration of the medical evidence in his case.

19  With respect to the Appeals Council's decision, Mr. Coffey argues that the Appeals Council

20  should have considered the opinion of Dr. Hemalatha Narra that confirmed the diagnosis of Mr.

21  Coffey's RLS.  Dr. Narra's report also explained the difference between RLS (Restless Leg

22  Syndrome) and PLMS (Periodic Limb Movement of Sleep) to counter the ALJ's reliance on the

23  absence of leg movements during Mr. Coffey's sleep studies as support for his Finding that Mr.

24  Coffey's RLS was not a severe impairment. AR 23.

25  As to the ALJ's opinion, Mr. Coffey asserts the following: (1) the ALJ failed to discuss all of the

26  medical opinion evidence, specifically the opinions of Dr. Duckham and Dr. Lum; and (2)

27  substantial evidence does not support the ALJ's stated reasons for rejecting Dr. Duckham's opinions

28  that Mr. Coffey is disabled.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *Zamora v. Astrue*, No. C 09-3273 JF, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010). "By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527). "The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) and *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).

"If a treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight.'" *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)). "If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Social Security] Administration considers specified factors in determining the weight it will be given." *Id*. "Those factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Id*. (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii)). "Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the [Social Security] Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record." *Id*. (citing 20 C.F.R. § 404.1527(d)(3)-(6)). Nonetheless, even if the treating physician's opinion is not entitled to controlling weight, it is still entitled to deference. *See id.* at

632 (citing SSR 96-02p at 4 (Cum. Ed. 1996)).  Indeed, "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SR 96-02p at 4 (Cum. Ed. 1996).

"Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn*, 495 F.3d at 630 (citing 20 C.F.R. § 404.1527(d)(1)-(2)); *see also* 20 C.F.R. § 404.1527(d).  Accordingly, "[i]n conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).  "'To reject [the] <u>uncontradicted</u> opinion of a treating or examining doctor, an ALJ must state <u>clear and convincing reasons</u> that are supported by substantial evidence.'" *Id*. (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)) (emphasis added).  "'If a treating or examining doctor's opinion is <u>contradicted</u> by another doctor's opinion, an ALJ may only reject it by <u>providing specific and legitimate reasons</u> that are supported by substantial evidence.'" *Id*. (quoting *Bayliss*, 427 F.3d at 1216) (emphasis added).[4]  Opinions of non-examining doctors alone cannot provide

---

[4] Although the type of reasons needed to reject either a treating or an examining physician's opinion is the same, the amount and quality of evidence in support of those reasons may be different. As the Ninth Circuit explained in *Lester*:

> Of course, the type of evidence and reasons that would justify rejection of an examining physician's opinion might not justify rejection of a treating physician's opinion.  While our cases apply the same legal standard in determining whether the Commissioner properly rejected the opinion of examining and treating doctors—neither may be rejected without 'specific and legitimate' reasons supported by substantial evidence in the record, and the uncontradicted opinion of either may only be rejected for 'clear and convincing' reasons—we have also recognized that the opinions of treating physicians are entitled to greater deference than those of examining physicians. *Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(d).  Thus, reasons that may be sufficient to justify the rejection of an examining physician's opinion would not necessarily be sufficient to reject a treating physician's opinion.  Moreover, medical evidence that would warrant rejection of an examining physician's opinion might not be substantial enough to justify rejection of a treating physician's opinion.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   substantial evidence to justify rejecting either a treating or examining physician's opinion.  *See*

2   *Morgan*, 169 F.3d at 602.  An ALJ may rely partially on the statements of non-examining doctors to

3   the extent that independent evidence in the record supports those statements.  *Id.*  Moreover, the

4   "weight afforded a non-examining physician's testimony depends 'on the degree to which they

5   provide supporting explanations for their opinions.'"  *See Ryan*, 528 F.3d at 1201 (quoting 20 C.F.R.

6   § 404.1527(d)(3)).

7       At the Appeals Council level, the Council must consider the evidence presented but need not

8   provide a detailed rationale for rejecting new evidence.  *Taylor v. Comm'r, Soc. Sec. Admin.*, 659

9   F.3d 1228, 1232 (9th Cir. 2011), citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996) (Appeals

10  Council not required to make any particular evidentiary finding).

11      **1.  Appeal's Council Consideration of Dr. Narra's Opinion**

12      The ALJ's opinion states that Mr. Coffey's Restless Leg Syndrome was not "truly medically

13  determinable. . . because the medical evidence submitted in this case does not contain appropriate

14  clinical findings to support such a diagnosis."  AR 23.  In finding that Mr. Coffey's RLS was not a

15  disabling condition, the ALJ also placed great emphasis on the fact that during the sleep studies that

16  Mr. Coffey underwent for his sleep apnea he "*experienced no periodic leg movement during this*

17  *study.*"  AR 25 (emphasis added by ALJ).  The ALJ rejected the report of Mr. Coffey's treating

18  physician, Dr. Duckham, that Mr. Coffey suffered from RLS, as it was not, in the ALJ's view,

19  supported by "any clinical findings."  AR 26.

20      On appeal of the ALJ's decision, Mr. Coffey submitted the report of his treating neurologist, Dr.

21  Narra, to respond to these findings.  Dr. Narra explained in the report that Mr. Coffey could not have

22  provided the ALJ with any "clinical findings" on his RLS because there is no medical test available

23  to confirm RLS directly.  AR 341.  However, Dr. Narra confirmed Mr. Coffey's diagnosis of severe

24  intractable Restless Leg Syndrome using what Dr. Narra refers to as the "recognized diagnostic

25  criteria."  AR 341-342.

26      As to the fact that Mr. Coffey's sleep studies registered no leg movements, Dr. Narra explained

27

28
───────────────
*Lester*, 81 F.3d at 831 n.8.

that "20% of people with RLS do not also have" Periodic Leg Movement Syndrome.  AR 342.

Moreover, Dr. Narra opined that overnight sleep studies "do not register RLS because the patient is

kept awake by RLS and time awake is not considered part of the sleep study."  AR 341.

In Mr. Coffey's case, the Appeals Council admitted the opinion of Dr. Hemalatha Narra but

made no particular findings in regard to Dr. Narra's report.  Nor did the Council remand the matter

to the ALJ to make any findings based on that report (or any of the other additional evidence

submitted). AR 5, 8.  The Appeals Council merely held that nothing in the record required the

Council to review the matter further and so they denied the appeal.  AR 5.

Mr. Coffey argues that the Appeals Council's failure to address Dr. Narra's report was reversible

error.  He cites to the Ninth Circuit case of *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228

(9th Cir. 2011) for support.  In *Taylor*, on appeal of an adverse decision by the ALJ to the Appeals

Council, plaintiff submitted new medical evidence consisting of follow-up psychiatric evaluations

from several doctors. The Appeals Council denied review but failed to consider at all the evidence

from one of the doctors, Dr. Thompson, that the Ninth Circuit noted had apparently been lost in the

"shuffle." *Id.* at 1233.

The Ninth Circuit held that while generally an Appeals Council was not required to make any

particular evidentiary finding on new evidence, in Mr. Taylor's case,  the Appeals Council's failure

to consider Dr. Thompson's report at all was a violation of 20 C.F.R. § 404. 970(b).  *Id.* at 1232-33.

The Ninth Circuit therefore remanded the case to the ALJ to reconsider the denial in light of Dr.

Thompson's report.  Mr. Coffey argues that the situation with Dr. Narra's letter is the same here.

The facts of the *Taylor* case, however are inapposite.  Here, in the section of the Appeals Council

opinion denominated "What We Considered," the Appeals Council clearly stated that it had

considered "the additional evidence listed on the enclosed Order of Appeals Council," and that list

includes Dr. Narra's report.  AR 5, 8.  Thus, the Appeals Council met its obligation regarding Dr.

Narra's report.  There is a question, however, as to whether the Appeals Council considered the lay

opinions submitted by Ron Friedland or Hugh Pouncey that go to Mr. Coffey's work ethic, which

the ALJ questioned and utilized in his determination of Mr. Coffey's lack of credibility, discussed

below.

ORDER (C11-01380 LB)

**2**. **ALJ Consideration of Dr. Duckham's 4/21/08 Statement and Dr. Lum's Statement**

Mr. Coffey asserts that it was error for the ALJ to fail to mention in his opinion the medical opinions of two of Mr. Coffey's treating physicians: (a) the opinion letter of Dr. Duckham dated April 21, 2008, AR 310, and (b) the opinion letter of Dr. Lum dated October 15, 2008. When determining whether a claimant is disabled, the ALJ must consider each medical opinion in the record together with the rest of the relevant evidence. 20 C.F.R § 416.927(b); *Zamora v. Astrue*, No. C 09 -3273 JF, 2010 WL 3814179, at *3 (N.D. Cal. Sept. 27, 2010). *See also* 20 C.F.R. § 404.1527(b). The Commissioner concedes that the ALJ did not consider these two opinions but asserts that the failure to do so was harmless error. An error is harmless if the evidence that was not considered is neither significant nor probative. *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (*per curiam*). *See also Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990) (harmless error to find that claimant was 50 when she was actually 53 and that she had a GED when she had testified that she was unclear as to whether she had a GED).

Both Dr. Duckham and Dr. Lum's letters were presented as part of Mr. Coffey's application to the Santa Clara County General Assistance Program. Both letters indicate that Mr. Coffey suffered from severe sleep apnea, chronic fatigue and Restless Leg Syndrome and that these conditions dated back to 1996. AR 310, 311. Dr. Duckham's letter refers to the likely duration of Mr. Coffey's condition as a "lifetime disability" and that the onset of the disability was May 1, 2005. AR 310. These letters are significant and probative, and it was error for the ALJ to fail to consider them.

**3. ALJ Rejection of Medical Opinions**

Mr. Coffey argues that the ALJ erred by rejecting those opinions of Dr. Duckham that he did consider. Dr. Duckham was Mr. Coffey's treating physician since May 2005. AR 142. Dr. Duckham's treatment record shows as of their first meeting in May 3, 2005, they discussed Mr. Coffey's Restless Leg Syndrome and that Dr. Duckham was aware that the Restless Leg Syndrome preceded Mr. Coffey's first visit to him. AR 305. The ALJ rejected as conclusory Dr. Duckham's November 5, 2009 statement, AR 305, that "gradually over time, [Mr. Coffey's] fatigue has increased to the point of disability," AR 24. The ALJ also found that this conclusion invaded the province of the ALJ. *Id*.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

1    In discounting Dr. Duckham's findings, the ALJ relied in part on the post-hearing examination

2    of Dr. Gable.  AR 340.  The ALJ's decision states that "[g]reat weight is given to the medical

3    opinion expressed by Dr. Gable: 'the claimant's *apparent* chronic difficulty with sleep . . . *may*

4    indeed make it difficult to work a full time job.'" AR 25 (Italics supplied in ALJ decision.).  While

5    counsel for Mr. Coffey argued  that Dr. Gable's opinion confirmed Dr. Duckham's opinion that Mr.

6    Coffey was disabled, the ALJ rejected this notion.  The ALJ focused on the word "may" (although

7    the actual language of the letter said "may indeed") and determined that Dr. Gable was questioning

8    whether Mr. Coffey's condition was certain to affect Mr. Coffey's ability to work a full time job.

9    AR 25-26.  Reading Dr. Gable's opinion in its totality, his statement that Mr. Coffey's conditions

10   "may indeed" make it difficult to work a full time job does not on its face contradict Dr. Duckham's

11   opinion that Mr. Coffey's condition is disabling.  To extent that these statements are not in conflict,

12   as Dr. Duckham is Mr. Coffey's treating physician, his opinion is entitled to controlling weight.

13   *Orn,* 495 F.3d at 631.  In order to reject the uncontradicted opinion of a treating physician, the ALJ

14   must provide "clear and convincing reasons that are supported by substantial evidence."  *Ryan v.*

15   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  The ALJ rejected Dr. Duckham's

16   findings as not supported by clinical medical findings.  *Batson v. Comm'r of Soc. Sec.*, 359 F.3d

17   1190, 1195 (9th Cir. 2004) (an ALJ may discredit treating physicians' opinions that are conclusory,

18   brief, and unsupported by the record as a whole, or by objective medical findings).  The "clinical

19   medical findings" to which the ALJ refers are the three sleep tests, which did not show on those

20   three evenings any leg movements while Mr. Coffey was asleep.  While the ALJ found that the lack

21   of leg movements vitiates a finding of RLS, the reports of the doctors who interpreted the sleep

22   study results still indicate that Mr. Coffey suffers from RLS, and additionally, the first sleep study

23   notes that Mr. Coffey reported restless leg pains.  AR 190 (Dr. Le report); AR 193 (Dr. Clerk

24   report).

25       Substantial evidence in the record as a whole supports Dr. Duckham's opinion that Mr. Coffey

26   suffered from severe Restless Leg Syndrome and that he has consistently suffered from the side

27   effects of the medication to treat it, including daytime somnolence.  Starting in 1997, each of Mr.

28   Coffey's treating physician has diagnosed him with Restless Leg Syndrome and has discussed the

effect of the treating medications.  *See* reports of Dr. Ebnother, AR 277; Dr. Huan Le, AR 188; Dr.

Alex Clerk, AR 192; Dr. Barman, AR 267; Dr. Han, AR 263; and Dr. Mohindra, AR 260.

Additionally, the evidence from Dr. Narra's report submitted to the Appeals Council responds to the

ALJ's finding of no clinical evidence by explaining that there is no medical test for RLS and that the

lack of periodic leg movements during the sleep study are not indicative of the lack of RLS.  AR

341.  As a treating physician, Dr. Narra's report is entitled to great weight.  *Orn*, 495 F.3d at 631

(9th Cir. 2007).

The ALJ's other stated basis for rejecting Dr. Duckham's opinion was that it invaded the

province of the ALJ.  Opinions of disability are reserved to the Commissioner.  *See, e.g.*, 20 C.F.R.

§ 416.945(e) ("A statement by a medical source that you are 'disabled' or 'unable to work' [is not a

medical opinion and] does not mean that we will determine that you are disabled").  However, the

regulations take into account that a treating physician may provide such an opinion and state that

where a treating source provides an opinion on an issue reserved to the Commissioner, but the basis

for such opinion is unclear, the ALJ must "make every reasonable effort to recontact [the] source[]

for clarification." *Id*.[5] The ALJ rejected Dr. Duckham's finding of disability as "conclusory" at best.

If there was some question as to the support for Dr. Duckham's opinion, at a minimum, the ALJ

should have contacted Dr. Duckham for clarification.[6]  However, as substantial evidence in the

record as a whole supports a finding that Mr. Coffey's suffers from severe RLS, and that his RLS

and the side effects of the medication he takes to treat this condition are disabling, clarification at

this juncture is not necessary.

**B. <u>Mr. Coffey's Credibility</u>**

At his disability hearing, Mr. Coffey's basic allegations were that (1) he suffered from Restless

Leg Syndrome more than sleep apnea, and that the syndrome prevented him from being able to fall

---

[5]  While SSRs do not have the force of law, they are entitled to deference as the Commissioner's interpretation of the agency's regulations. *Holohan v. Massinari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001)

[6]  The ALJ clearly sought additional guidance after the hearing as he referred Mr. Coffey out for two post-hearing medical consultations.

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    or stay asleep, and (2) when he took the medication to treat his RLS he experienced side effects.

2    The overall effect of the situation was that he suffered from extreme fatigue and felt like "a zombie."

3    AR 23-24, 52, 57.   The ALJ  discounted Mr. Coffey's  allegations of disabling symptoms and found

4    that Mr. Coffey appeared to have limited motivation to seek work.  AR 20, 23-24, 26.

5        In finding that Mr. Coffey's "testimony regarding his symptoms is not entirely credible,"  the

6    ALJ considered "the absence of clinical signs in the medical record that would support the alleged

7    severity of the claimant's sleep problems" and Mr. Coffey's "inconsistent work history and earnings

8    record even prior to the alleged onset of the disability – Mr. Coffey's earnings record suggests he

9    withdrew himself from the competitive labor market in 2001, the last year he had significant

10   earnings . . . indicating that the claimant has limited motivation to work."  AR 24.  The ALJ also

11   found that Mr. Coffey's credibility was impacted by what the ALJ described as "the rather extreme

12   fashion" in which Mr. Coffey had described his symptoms at the hearing.  *Id.*

13       The ALJ considered Mr. Coffey's testimony that he became "really wiped out very rapidly in a

14   matter of a day" if he did not take the medication for Restless Leg Syndrome but found what the

15   ALJ referred to as "significant discrepancies between the claimant's asserted difficulties with sleep

16   and the diagnostic tests and findings made on the examination."  *Id.*

17       To determine whether a claimant's testimony about subjective pain or symptoms is credible, the

18   ALJ must engage in a two-step analysis.  *See Vasquez*, 572 F.3d at 591 (citing *Lingenfleter v. Astrue*,

19   504 F.3d 1028, 1035-36 (9th Cir. 2007)).  First, the ALJ must determine whether the claimant has

20   presented objective medical evidence of an underlying impairment that reasonably could be

21   expected to produce the alleged pain or other symptoms.  *See Lingenfelter*, 504 F.3d at 1036.

22   Second, if the claimant meets the first test and there is no evidence of malingering, the ALJ can

23   reject the claimant's testimony about the severity of his symptoms only by offering specific, clear

24   and convincing reasons for doing so.  *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 599 (9th

25   Cir. 1999).  This court defers to the ALJ's credibility determination if it is supported by substantial

26   evidence in the record.  *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

27       As discussed in detail above, objective medical evidence supports a finding that Mr. Coffey

28   suffers from RLS and that throughout the years of this diagnosis, Mr. Coffey has experienced

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

UNITED STATES DISTRICT COURT
For the Northern District of California

significant daytime somnolence that has impaired his ability to function.  Dr. Duckham opined in 2005 that the RLS and its treatment were disabling.  None of Mr. Coffey's treating physicians or the physicians assigned by Social Security to examine Mr. Coffey found that he was malingering.

While the ALJ discredited Mr. Coffey's interest in working based on his several years of unemployment and his low salary before that, Mr. Coffey presented to the Appeals Council substantial evidence of the following:  when he was physically able to do so, he was a hard worker; his area of expertise, computer programming was especially hard hit by the tech industry collapse of 2001; and his low earnings were due in large part to being a founder of a number of startups where he took a low salary to reinvest it in the companies he was trying to build.  *See* Exhibit 14E (statement of Gordon Waugh, AR 150) (Mr. Coffey was a hard worker and took only small salary to build a start up); Exhibit 15E (statement of Robert Lawrence, AR 156) (starting in 2006 Mr. Coffey's symptoms worsening steadily); Exhibit 16E (statement of Laurel Griffin, AR 158) (as technical recruiter, she was aware that technology jobs were difficult to find in the 2001-03 time period); Exhibit 17E (statement of Harvey Miller, AR 164) (Mr. Coffey provided Mr. Miller with technology assistance but because of his medical conditions Mr. Coffey became less able to do so in the 2003-05 time frame).

In contrast to the substantial evidence in the record supporting Mr. Coffey's credibility, the ALJ did not provide specific and sufficient reasons for discounting Mr. Coffey's allegations.

## VI. CONCLUSION

The court **GRANTS IN PART** Mr. Coffey's motion for summary judgment and **DENIES** the Commissioner's cross-motion for summary judgement.  The court **REMANDS** this case to the Social Security Administration for further proceedings to determine Mr. Coffey's residual functional capacity and whether there are jobs in the national economy that Mr. Coffey can do.

The court reiterates, however, that objective medical evidence supports the conclusion that Mr. Coffey suffers from RLS and treatment of it that are disabling, and the court specifically finds that Dr. Duckham's report is not contradicted by the other medical evidence and is supported by Dr. Gable's evaluation.  The record thus far supports an award of benefits, but because the ALJ did not address the last steps of residual functional capacity and jobs in the national economy, the court

1    remands for that consideration.

2          This disposes of ECF Nos. 20 & 22.

3          IT IS SO ORDERED.

4                                                    _____
                                                     LAUREL BEELER
                                                     United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California